Troy Y. Nelson, ISB #5851
RANDALL | DANSKIN, P.S.
601 W. Riverside Avenue, Suite 1500
Spokane, WA  99201-0653
Telephone: (509) 747-2052
Facsimile: (509) 624-2528
tyn@randalldanskin.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MAIRIN JAMESON, an individual, | Case No. |
| Plaintiff, | COMPLAINT AND JURY DEMAND |
| vs. | |
| UNIVERSITY OF IDAHO, a public university, | |
| Defendant. | |

FOR CLAIMS AGAINST DEFENDANT, Plaintiff Mairin Jameson, an individual, states and alleges the following:

## PARTIES

1.    <u>Mairin Jameson</u>:   Plaintiff Mairin Jameson ("Mairin") was, at all times relevant hereto, a female student at the University of Idaho.

2.    <u>University of Idaho</u>:   Defendant University of Idaho is an institution of higher education in the State of Idaho and is under the general supervision, government and control of the Idaho State Board of Education, which acts as the board of regents of said College.

COMPLAINT AND JURY DEMAND - 1

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

3.     University of Idaho:   Defendant University of Idaho is the educational institution located in Latah County, in Moscow, Idaho, heretofore known as University of Idaho pursuant to Idaho Code § 33-2801.

4.     University of Idaho:   Defendant University of Idaho is an institution of higher education and is, therefore, a public corporation that may be sued in its own name pursuant to Idaho Code § 33-3804.

## JURISDICTION AND VENUE

5.     Title IX: The University of Idaho receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681 *et seq.* and is otherwise subject to Title IX.

6.     Jurisdiction:   The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law including claims made under the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts and therefore form part of the same case or controversy, under Article III of the U.S. Constitution.

7.     Venue:   Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant University of Idaho is located within the State of Idaho and the events or omissions giving rise to the Plaintiff's claims occurred within the State of Idaho in this judicial district.

COMPLAINT AND JURY DEMAND - 2

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

8.      All conditions precedent to the maintenance of this suit and Plaintiff's claims have occurred, been performed or otherwise waived.

## **PERTINENT FACTS**

9.      Plaintiff incorporates and re-alleges paragraphs 1 through 8 as if fully set forth herein.

10.     Mairin was a third year student enrolled at the University of Idaho ("University" or "Defendant").

11.     On April 21, 2013, Mairin was sexually assaulted by a fellow student on the football team named Jahrie Z. Level ("Level" or "Perpetrator") off campus.

12.     Prior to that, on or about November 14, 2012, Perpetrator Level was cited for providing vodka to two University students under the age of 21.

13.     The citation was dated November 27, 2012.

14.     According to the police report associated with the incident, one of those University students was taken to the hospital with a blood alcohol content of .36, bruising on both sides of her neck and both knees, and scratches on her back.

15.     The police report stated that the neck bruises were 3-4 inches long and 1-2 inches wide.

16.     The Moscow Police Department investigated the incident as a potential assault by Level, but did not pursue charges outside of the alcohol citation.

17.     The student reported the incident with Level to the University Dean of Students office.

COMPLAINT AND JURY DEMAND - 3

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

18.     Despite the incident being reported to the University Dean of Students office, Athletic Director Rob Spear ("Spear") and former interim football coach Jason Gesser ("Gesser"), were never even informed of the incident.

19.     Upon information and belief, the University did not investigate the incident, did not take action against Level for the incident nor did the University take any steps to protect other University students from Level.

20.     Instead, Level continued to play football for the University without any consequences.

21.     On or about April 1, 2013, Level introduced himself to Mairin, a Junior level student at the University and diver on the swim team.

22.     Level introduced himself to Mairin at the University outside of the computer lab in the Kibbie Dome as a "Hound," and stated to her "[d]o you want to f**k with a baller, baby?"

23.     Mairin refused to give Level her name and told him she was not interested. Assistant football coach Kevin Small witnessed the incident, and rather than address Level's vulgar statement to Mairin, he commented "rejected."

24.     On or about April 8, 2013, Mairin had another interaction with Level at the Kibbie Dome in which he used similar vulgar language towards her, again, stating "[h]ey baby, you ready to f**k with a baller."

25.     Mairin again told Level she was not interested and that he was disrespectful toward women.

COMPLAINT AND JURY DEMAND - 4

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

26.     On that same day, a short time later, University student and distance runner Maggie Miller ("Maggie"), had an interaction with Level in which he threatened to slap her while she was using a cold tub in the training room after she declined his invitation to a barbecue.

27.     Specifically, when Maggie declined Level's invitation to a barbeque, he became upset and told Maggie "I'm going to slap this bitch, for her attitude" and "I'll call you a bitch if I want to."

28.     Level then held out his hand and told her to come over so he could slap her. Mairin witnessed this threat made by Level against Maggie.

29.     Two hours later, Maggie was sitting by a vending machine in the Kibbie Dome. Level walked by and stared at Maggie to intimidate her.  Maggie went looking for staff and Level followed her.

30.     Within an hour of the threat, Maggie reported this incident to the Moscow Police Department and head football coach Paul Petrino ("Petrino").

31.     Maggie informed head coach Petrino and other football coaches of the exact threat Level had made against her.

32.     Maggie told Petrino that "he needed to do something about it." However, it was clear from Maggie's conversation with Petrino that "[h]e clearly didn't care."

33.     In addition, Maggie told her own track coach Wayne Phipps ("Phipps") of the threat made against her by Level.

34.     Despite this incident being reported, the University, Petrino, other football coaches and Phipps, did nothing to stop Level's misconduct.

COMPLAINT AND JURY DEMAND - 5

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

35.     Instead, Level continued to play football at the University without consequences.

36.     To that end, the University did nothing to protect Mairin or other students from future sexual assaults or harassment by Level.

37.     On April 8, 2013, Mairin was walking on campus and Level approached her, putting his arm around her to stop her progress.

38.     Mairin spun around to get away from Level and kept walking away from him.

39.     On April 13, 2013, Mairin and her roommate held a get-together at their apartment.  Level was not invited, but showed up with a mutual friend.

40.     Level followed Mairin into her bedroom and placed his hands on her hips. Mairin immediately told Level he was not welcome in her room.

41.     Mairin did not feel safe around Level.

42.     On April 20, 2013, Mairin went to CJ's Nightclub with friends.

43.     Unbeknownst to Mairin, Level was also at the nightclub.

44.     At 1:54 a.m. on April 21, 2013, Level approached Mairin from behind and put his fingers up her skirt rubbing them from the front of her underwear all the way to her butt.

45.     Mairin immediately turned around to slap away Level's right arm and yelled at him "that is so disrespectful. You aren't allowed to touch me like that."

46.     Mairin left crying and went home.

COMPLAINT AND JURY DEMAND - 6

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

47.     On April 23, 2013, Mairin told Susan Steele ("Steele"), the Athletics Academic Coordinator for the swimming and diving team about the sexual assault committed by Level.  Mairin told Steele that she needed Level gone and did not feel safe around him.

48.     Steele called Moscow Police Lieutenant Dave Lehmitz ("Lieutenant Lehmitz"), who supervised the campus division of the Moscow Police, to report the sexual assault.

49.     Lieutenant Lehmitz immediately met with Mairin and Steele to discuss the sexual assault.

50.     Lieutenant Lehmitz told Mairin that she could handle the sexual assault through the criminal justice system or internally through the University Athletic Department.

51.     Following that meeting, Lieutenant Lehmitz then immediately reported the sexual assault and harassment against Mairin to Petrino and Spear.

52.     Neither Petrino nor Spear reported the sexual assault and harassment by Level toward Mairin to the Dean of Students.

53.      On April 25, 2013, Mairin met with Spear, Steele, Lehmitz and Petrino in Spear's office regarding the sexual assault and harassment by Level.

54.     At that meeting, Mairin provided details of all of her interactions with Level, Level's interactions with Maggie (including his threat against her), and the sexual assault and harassment by Level against Mairin that occurred on April 21, 2013.

COMPLAINT AND JURY DEMAND - 7

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

55.     During that meeting, Mairin emphasized that she feared Level and his behavior towards her has been escalating.

56.      At that meeting, Mairin was told by Spear, Steele and Petrino that the University could not investigate her sexual assault because it occurred off-campus.  That is absolutely false.

57.     Spear, the University and others have since acknowledged that they could have, and should have, investigated this off-campus sexual assault by Level against Mairin.

58.     Spear, Petrino and the University had an obligation under Title IX to immediately report the sexual assault and harassment by Level against Mairin to the Dean of Students and take action to protect Mairin (and other students).

59.     Rather than report the sexual assault and harassment to the Dean of Students or even offer Mairin any help at the meeting, Spear and Petrino told Mairin that Level would be required to seek some counseling and check in twice daily with his football coach Petrino.

60.     Spear further told Mairin to tell her friends about Level's assault of her and to "watch out for him [Level]."

61.     Amazingly, coach Petrino tried to justify Level's sexual assault against Mairin by claiming Level did not have the same "upbringing" as Mairin.

62.     During that meeting, Spear and Petrino failed to offer Mairin any sympathy, an apology or any counseling options.

63.     Instead, only Level was offered counseling.

COMPLAINT AND JURY DEMAND - 8

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

64.     Mairin walked away from that meeting planning to transfer from the University because they were not going to do anything to help her.

65.     Following that meeting, on April 25, 2013, Spear claims to have reported the sexual assault and harassment by Level to former University of Idaho President Duane Nellis ("Nellis").

66.     Former President Nellis also failed to report the sexual assault to the Dean of Students or provide Mairin any support.

67.     On April 26 or April 27, 2013, Mairin's swimming and diving coach, Mark Sowa ("Sowa"), who had been out of town recruiting during the April 25th meeting, met with Spear regarding Mairin's complaint of sexual assault and harassment by Level.

68.     Following that meeting, Sowa also failed to report the sexual assault to the Dean of Students.

69.     Mairin was never notified of her Title IX rights by Spear, Petrino or any other University representative as required by law.

70.     Since the Dean of Students was never notified by Spear or Petrino of the sexual assault and harassment by Level against Mairin, there was nobody investigating the sexual assault.

71.     Spear, Petrino, Steele, Nellis, Sowa and any other University employee with knowledge of the sexual assault and harassment by Level against Mairin, were required under Title IX and University policies to inform the Dean of Students of Level's conduct toward Mairin.  However, all failed to do so.

COMPLAINT AND JURY DEMAND - 9

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

72.     On April 27, 2013, because of the failure of the University and its representatives to protect Mairin from Level, Mairin's parents, JoAnn and Ed Jameson, sent an email letter to Spear with concerns about Mairin's safety at the University.

73.     In that letter, among other things, Mairin's parents requested clarification from Spear on "the Violence Against Women policy at the University," even referencing the murder of a former University student by a professor in 2011 and the University's subsequent assurances to parents about an emphasis on student safety.

74.     Mairin's parents requested a copy of that policy.

75.     Mairin's parents further requested assurances from Spear that the "measures/policies" in place to protect violence against women at the University were "thoughtful, thorough and most importantly communicated and implemented."

76.     Mairin's parents wanted to know "what the University's policies are and how you [Spear] are taking measures to follow them."

77.     In the email Mairin's parents question whether Level would have been dismissed if the sexual assault against Mairin included physical harm or rape, and asked how many assaults needed to occur to Mairin or others before Spear takes action based on his prior statement at a meeting that "'[i]f this happens again, he will be gone.'"

78.     The email from Mairin's parents to Spear noted that he appeared "to have a 'some tolerance' policy of violence against women."

79.     The email asked whether it was Mairin's "responsibility to assure that all females on your campus are aware that one of your football players is a sexual predator," rather than the University's responsibility.

COMPLAINT AND JURY DEMAND - 10

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

80.     Mairin's parents questioned whether Mairin (or other students) would have to be assaulted or raped by Level before the University would finally take action.

81.     The email further emphasized to Spear that Mairin "feels unsafe on campus and in all athletic facilities" and that both Mairin and her parents fear "retaliation" by Level.

82.     Mairin's parents asked Spear whether the decision to allow Level to stay on the football team was because of the money and recognition that comes from the football program, and expressed disappointment that Spear and the University appeared to be focused on protecting the football player and program while doing "nothing" to protect Mairin, other than advising her to "watch out" for Level. Mairin's parents told Spear they expected more from the University.

83.     Mairin's parents further asked Spear what his recommendations are "for support and mental health care" for Mairin as the victim of a sexual assault by Level, inquiring into what resources the University has for victims, the best way to access those resources and the contact person for such resources.

84.     Finally, Mairin's parents asked Spear for a "written plan of action going forward" from the University to ensure Mairin's safety for her current school year and the next year since Spear and the University chose "to allow her attacker to remain there."

85.     That same day, April 27, 2013, Level posted an Instagram photo of himself with a gun at a shooting range, only adding to Mairin and her family's concern about her safety around Level.

86.     On April 29, 2013, at the University, Lieutenant Lehmitz interviewed Level about the sexual assault against Mairin.

COMPLAINT AND JURY DEMAND - 11

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

87.     Level claimed the touching was an accident.

88.     On May 2, 2013, Spear finally responded to Mairin's parents' April 27, 2013 email, taking exception to Mairin's parents' comment that Spear, the University and Petrino were "protecting a football player."

89.     In that response, Spear claimed that Level was "not a threat," and then immediately contradicted himself in the same email stating that he told Coach Petrino he "did not want him around our female athletes."

90.     This is an explicit recognition by Spear and Petrino that Level was a danger to female students at the University.

91.     Moreover, Spear's response fails to explain how the University would protect Mairin and other female students at the University.

92.     Spear further responded that requiring Level to have daily meetings with coach Petrino, community service and scheduled education, was a sufficient response, rather than removing Level from the football team.

93.     Spear never sent Mairin's parents any of the information they requested in their April 27, 2013 email, including, but not limited to, Spear failed to send "the Violence Against Women policy at the University," a "written plan of action" to ensure Mairin's safety and he failed to provide the contact information for the Women's Center requested.

94.     In fact, Spear and Petrino failed to provide any confirmation to Mairin or her parents that Level was even required to follow through with his daily meetings with coach Petrino, community services and continued education.

COMPLAINT AND JURY DEMAND - 12

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

95.     Through all of this, the University, Petrino, Spear and other University officials and coaches continued to allow Level to play football at the University and did nothing to protect Mairin or other students from Level.

96.     Level was a key contributor on the University's football team.

97.     On April 30, 2013, without any help or suggestion by the University, Mairin began seeing a counselor to address the sexual assault and harassment by Level and the University's failed response to help her.

98.     At the suggestion of her counselor, Mairin visited the Women's Center at the University on May 3, 2013 – the day after Spear emailed Mairin's parents and told them he was not going to help Mairin.

99.     At the Women's Center, Mairin told her sexual assault story to the Director of the Women's Center.

100.    The Director of the Women's Center helped Mairin by taking her to the Dean of Students and finally forcing the University into investigating Level's sexual assault and harassment of her.

101.    Later that day, Mairin sent an email to the Dean of Students with her police statement and the email exchange between her parents and Spear.

102.     On May 8, 2013, Mairin and her mother met with Lieutenant Lehmitz at his University office to pursue criminal charges against Level.

103.    For safety reasons, Mairin waited until Level had left the campus for summer break before seeking criminal charges against him. After meeting with Mairin and her

COMPLAINT AND JURY DEMAND - 13

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

mother, Lieutenant Lehmitz began interviewing witnesses and started a criminal investigation.

104.    On May 9, 2013, Lieutenant Lehmitz located video surveillance evidence of the sexual assault by Level.

105.    In that video, Level was seen chest-bumping, laughing and shaking hands with his football teammate following the sexual assault.

106.    Lieutenant Lehmitz met with Spear and Petrino in person after watching the video to deliver his findings.

107.    Level was charged with misdemeanor battery.

108.    Finally, several weeks after Mairin reported Level's sexual assault and harassment of her with no action taken by the University, Petrino or Spear, among others, Level was dismissed from the University football team on May 9, 2013.

109.    Notably, Spear claimed that he needed corroboration of the facts before making a decision on Level.

110.    However, the University, Petrino and Spear, among others, did nothing to ever investigate the sexual assault despite Mairin telling them about the sexual assault, harassment and other incidents of misconduct by Level towards her and others weeks earlier.

111.    On May 11, 2013, Lieutenant Lehmitz called Mairin to tell her about the video while she was driving home for the summer break with her mother.

112.    Mairin and her mother were at the University campus the day Level was dismissed from the football team.

COMPLAINT AND JURY DEMAND - 14

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

113.    Despite that, the University, Petrino and Spear failed to even inform Mairin that Level had been dismissed from the football team.

114.    It would not be until late May or early June 2013, that Petrino finally called Mairin to tell her that Level had been dismissed from the football team.

115.    During that time, Mairin explored transferring to another school to get away from Level.

116.    On October 7, 2013, the University Judicial Council ("UJC") completed the case against Level.

117.    The case included seven (7) violations of the Student Code of Conduct, with five (5) of those counts involving the sexual assault and harassment of Mairin, and the remaining two counts involving the harassment and intimidation of Maggie.

118.    A hearing was held on October 7, 2013 and the UJC's panel of students, staff and faculty determined it was "more likely than not" that Level "engaged in sexual harassment, sexual violence, gender-based harassment, and intimidation, undertaken knowingly."

119.    The UJC determined that Level's actions "seriously and critically endangered the essential operations of UI and the safety of members of the university."

120.    The UJC panel found that Level had committed seven (7) violations of the Student Code of Conduct, and it expelled him from the University.  By that time, Level had already transferred to another school.

121.    The UJC panel further stated that "[m]embers of the UJC believe that the pattern of behavior exhibited by Mr. Level in the case may continue at another institution,"

COMPLAINT AND JURY DEMAND - 15

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    and suggested that the University reach out to Level's new school, Stony Brook, with its

2    findings.

3

4        122.    The University has failed to acknowledge whether it ever informed Stony

5    Brook of Level's misconduct against Mairin.

6

7        123.    On February 13, 2018, Spear emailed Mairin acknowledging that he had

8    violated Title IX and admitting that he "should have known" about the University's Title IX

9    policy.

10       124.    Spear never issued an apology prior to that time.

11

12       125.    In fact, Spear saw Mairin in her first few weeks back to school and did not

13   say a word to her.

14       126.    On or about April 3, 2018, Spear was put on paid administrative leave for

15

16   sixty (60) days by the President of the University, Chuck Staben ("Staben").

17       127.    Spear was placed on administrative leave while the University conducted an

18   internal and external investigation into Spear's failures in addressing Mairin's sexual assault

19

20   and harassment complaints in violation of Title IX.

21       128.    Conveniently, President Staben placed Spear on leave one (1) day before the

22   Associated Students of the University of Idaho ("ASUI") were set to vote on a resolution

23

24   calling for Spear's immediate resignation or removal from the University for his failure to

25   follow Title IX.

26       129.    Associate Athletic Director Pete Isakson served as the interim Athletic

27

28   Director during Spear's leave.

COMPLAINT AND JURY DEMAND - 16

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

130.    Despite Spear's failures to help Mairin, President Staben continued to refer to Spear as a "role model for the university."

131.    On April 4, 2018, following testimony spanning a few weeks, the ASUI approved a resolution calling for the resignation of Spear after his acknowledgment that he and others mishandled the sexual assault and harassment complaint of Mairin against Level in violation of Title IX.

132.    Specifically, the ASUI resolution recommended the resignation of Spear as the Athletic Director of the University.

133.    The University, Spear, Petrino and other University officials have since admitted violating Title IX with respect to Mairin's sexual assault and harassment complaints against Level in public statements and hearings.

134.    Moreover, on May 7, 2013, in a meeting with University legal counsel, Spear, Petrino and Sowa were informed by University legal counsel that they had failed to follow Title IX requirements with respect to Mairin's complaint of sexual assault and harassment against Level.

135.    Spear has acknowledged this meeting.

136.    Mairin was never informed that University legal counsel had told Spear, Petrino and Sowa that they had violated Title IX.

137.    On June 3, 2013, a draft report was issued related to the Title IX failures by the University which was never shared with Mairin.

COMPLAINT AND JURY DEMAND - 17

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

138.    Likewise, Mairin was never informed by the University, Spear, Petrino or any other University personnel of her own Title IX rights when she reported the sexual assault and harassment by Level, or at any time thereafter, to the present.

139.    In addition to Spear's email to Mairin acknowledging that he had violated Title IX, Spear has admitted that he violated Title IX with respect to Mairin's complaints of sexual assault and harassment against Level in several public statements and hearings.

140.    By way of example, Spear acknowledged that his Athletic Department and the University failed to comply with Title IX with respect to Level's sexual assault and harassment of Mairin, stating in interviews that "[w]e take responsibility for that and we learned from that and really have since educated this whole department with how to deal with these things in the right and correct way."

141.    Spear has further admitted that Title IX required him to immediately report the sexual assault and harassment of Mairin by Level to the Dean of Students after he was informed of the same by Lieutenant Lehmitz, but he failed to do so.

142.    Spear has further acknowledged that he violated Title IX by telling Mairin that the University could not even investigate the sexual assault because it occurred off-campus.

143.    In that regard, Spear, Steele and Petrino, among others, all violated Title IX guidelines by failing to immediately report the sexual assault and harassment of Mairin by Level to the Dean of Students, failing to investigate the sexual assault and harassment by Level against Mairin, failing to offer Mairin any support or counseling and otherwise failing

COMPLAINT AND JURY DEMAND - 18

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

to take immediate action to prevent further harassment following the meeting in which they learned about Level's behavior.

144.    Notably, at the April 25, 2013 meeting, Mairin explained in detail all of her interactions with Level, Level's interactions with Maggie (including his threat against her), details about the sexual assault and harassment by Level against Mairin that occurred on April 21, and otherwise emphasized that Level's behavior towards her was escalating.

145.    Spear, Petrino, Steele, Sowa, former President Nellis and any other University employee with knowledge of the sexual assault and harassment by Level against Mairin, were required under Title IX and University policies to immediately inform the Dean of Students of Level's sexual assault and harassment toward Mairin and take action.

146.    However, all failed to do so in violation of Title IX.

147.    Instead, Spear and Petrino continued to allow Level to play football for the University without consequences, and instead, told Mairin there was nothing they could do since the sexual assault occurred off-campus, which is absolutely false.  Spear has also acknowledged this failure.

148.    Moreover, the Dean of Students at the University, Blaine Eckles, has acknowledged that Spear and Petrino were required to report Level's sexual assault of Mairin in violation of Title IX.

149.    Likewise, had any of those individuals with knowledge acted on Level's prior incidents of sexual assault and harassment that were reported, Level's sexual assault against Mairin would never have happened.

COMPLAINT AND JURY DEMAND - 19

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

150.    The University has also issued statements admitting that it had made "mistakes" in the way it "handled the incident," that it has engaged in Title IX "process failures" in how it handled Mairin's sexual assault and harassment complaint, and that "the university acknowledges the matter [referring to the sexual assault and harassment incurred by Mairin] was initially mishandled."

151.    The University acknowledged that Mairin was given incorrect information about her options under the University's Title IX policy.

152.    In its statement, the University apologized for making Mairin's sexual assault situation "worse" for her.

153.    Notably, Spear has blamed the University for his failure to follow Title IX stating that during the time period of Mairin's sexual assault and harassment complaint there "was no training on this campus about Title IX, no training about how you're supposed to handle certain situations."

154.    This is contrary to the University's statement that its Title IX policy was clear and Spear was aware of it.

155.    Moreover, the Women's Center at the University clearly understood the Title IX requirements.

156.    Again, among other failures, the University, Spear, Petrino and other University personnel, failed to follow Title IX requirements of promptly investigating the report of sexual assault and harassment made by Mairin (and others) against Level, failed to take immediate steps to prevent further sexual assaults and harassment by Level against

COMPLAINT AND JURY DEMAND - 20

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

Mairin (and others), and failed to assist Mairin (and others) in addressing the assault and harassment by Level.

157.    Mairin was never given correct information or options of her Title IX rights from the University, Spear, Petrino or any other University personnel.

158.    Mairin has only become aware of the University's Title IX failures through Spear, Petrino and the University's recent admissions that it has violated Title IX and the University finally addressing such failures by placing Spear on administrative leave while it conducted an internal and external review and investigation into Spear, Petrino and the University's actions in failing to address Mairin's sexual assault and harassment complaints against Level.

159.    There have also been further reports of a dozen more claimed sexual assaults and harassments that were not dealt with properly by the University.

160.    These reports were reported to ASUI senators as anonymous written statements.

161.    As a consequence of the foregoing, Mairin has suffered permanent and severe physical, psychological and emotional injuries.

162.    The Office of Civil Rights ("OCR"), a division of the United States Department of Education ("DOE"), is responsible for the implementation, interpretation, and enforcement of Title IX.

163.    The OCR has promulgated numerous documents outlining the requirements for an educational institution to be in compliance with Title IX, including the Dear

COMPLAINT AND JURY DEMAND - 21

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

Colleague Letter of April 4, 2011 ("DCL"), which specifically concerns peer-on-peer sexual assault.

164.    The DOE was authorized by Congress, pursuant to 20 U.S.C. § 1682, to promulgate regulations to govern the implementation, interpretation and enforcement of Title IX.

165.    The DCL is a "significant guidance document," intended to provide educational institutions with clarity as to the requirements they must follow in order to be in compliance with the DOE. Pursuant to 72 Fed. Reg. 3432, a "guidance document" is "an agency statement of general applicability and future effect, other than a regulatory action…that sets forth a policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue." A "significant guidance document" is "a guidance document disseminated to regulated entities or the general public that may reasonably be anticipated to…(iv) Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended."

166.    The DCL specifically outlines the requirements that educational institutions must follow regarding peer-on-peer sexual assault.

167.    A failure to adhere to the requirements outlined in the DCL could result in the loss of federal funding for an educational institution.

168.    The DCL states that "Schools are required to publish a notice of nondiscrimination and to adopt and publish grievance procedures."

COMPLAINT AND JURY DEMAND - 22

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

169.    The DCL provides that a University is responsible for processing complaints of student-on-student sexual assault, even if it occurs off campus, because "students often experience the continuing effects of off-campus conduct in the educational setting…"

170.    The DCL states that sexual misconduct includes "sexual acts perpetrated against a person's will."

171.    The DCL requires the school to "take steps to protect a student who was assaulted off campus from further sexual harassment or retaliation from the perpetrator and his or her associates."

172.    The DCL also requires that the school's train their employees "with the authority to address harassment [so they] know how to respond properly."

173.    This training is to include "any employees likely to witness or receive reports of sexual harassment and violence, including teachers, school law enforcement unit employees, school administrators, school counselors, general counsels, health personnel, and resident advisors."

174.    The DCL further states that "schools need to ensure that their employees are trained so that they know to report harassment to appropriate school officials, and so that employees with the authority to address harassment know how to respond properly."

175.    The DCL states the school should further "ensure that complainants are aware of their Title IX rights and any available resources."

176.    The DCL further requires that anyone with reason to know or who should have reason to know about a sexual assault should report it to the Title IX coordinator.

COMPLAINT AND JURY DEMAND - 23

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

177. A university is not relieved of its duty to conduct an independent investigation under Title IX, even where there is a corresponding law enforcement investigation.

178. The Defendant University sanctioned a report to be submitted by independent investigators Dan Beebe and Pat Olsson regarding the University's failures under Title IX in responding to the sexual assault of Mairin by Level.

179. On July 16, 2018, an "Independent Investigation Report" ("Independent Report") was issued to the University that made a number of pertinent findings.

180. The Independent Report concluded Mairin reported the sexual assault to Spear (Athletic Director), Steele (the Athletics Academic Coordinator), Sowa (Swimming and Diving Coach), Petrino (Football Coach), Lehmitz (campus division of Moscow Police under contract with the University), Duane Nellis (former University President), and others, and none of them were trained that off campus sexual assault was covered by the University student code of conduct and had to be reported under Title IX.

181. Accordingly, there was a failure to properly report the allegations, in particular by the Athletic Department, to the Dean of Students office Title IX Coordinator by multiple University personnel.

182. The current Title IX coordinator acknowledged that the University personnel were generally unaware of these reporting requirements, and that off campus sexual assault was under the jurisdiction of the University.

COMPLAINT AND JURY DEMAND - 24

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

183.    This was also a violation of Spear's contract with the University which required him to know, recognize and comply with all applicable policies, rules and regulations of the University.

184.    Spear's contract also required him to ensure that all employees in the Athletic Department, know, recognize and comply with such policies.

185.    The Independent Report concluded that the University did not properly educate its employees on Title IX and widely disseminate the grievance policy to students and employees, as required by the DCL.

186.    The Independent Report also concluded that the University itself failed to adequately notify Spear of University policy changes related to Title IX.

187.    The Independent Report further concluded that Steele, the Athletics Academic Coordinator for the swimming and diving team that Mairin first reported the sexual assault to on April 23, 2013, believed that since the assault occurred off campus it was not within the Jurisdiction of the University, as she was not trained by the University to immediately report the assault to the Title IX Coordinator and did not report it.

188.    The Independent Report also concluded that Sowa, her Swim Coach, on April 25, 2013, had an obligation to report the sexual assault to the Title IX Coordinator when he was told about the assault, but was not trained by the University to immediately report the assault and did not report it.

189.    That same day on April 25, 2013, Mairin met with Spear, Petrino, Lehmitz, and Sowa, and the Independent Report concluded all of those personnel had an obligation to report the sexual assault to the Title IX Coordinator, but failed to do so.

COMPLAINT AND JURY DEMAND - 25

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

190.    In addition, the Independent Report concluded that each of those individuals had an obligation to advise or escort Mairin to the Dean of Students Office immediately to report the assault to the Title IX Coordinator, but failed to do so because none had been trained correctly by the University.

191.    In a second meeting on April 25, 2013, Spear again had a conversation with Mairin about the sexual assault, but failed to advise her to report the sexual assault to the Title IX Coordinator.

192.    Amazingly, the Independent Report also concluded that on April 26, 2013, the acting President of the University Nellis was advised of the sexual assault, but did nothing to advise Mairin of her Title IX rights or instruct Spear to immediately report the sexual assault to the Title IX Coordinator.

193.    The Independent Report concluded that on May 2, 2013, Spear incorrectly informed Mairin's parents that since the sexual assault occurred off campus it was not within the University's jurisdiction to investigate because of inadequate training.

194.    With respect to Spear himself, the Independent Report concluded that his contacts with Mairin and her family failed to show the "sensitivity and compassion that a person who is trained in communicating with individuals who have suffered trauma and have fear of further interaction with the perpetrator would exhibit."

195.    This is just a portion of the Title IX failures raised in the Independent Report.

196.    Moreover, University President Staben has acknowledged that had the University correctly handled the November 2012 case with Level involving the underage student found heavily intoxicated with severe bruising from Level and the April 2013

COMPLAINT AND JURY DEMAND - 26

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

complaint by Maggie against Level where he threatened her, Mairin would not have been sexually assaulted by Level.

197.    Both incidents were reported to the Moscow Police, the University and the Athletic Department prior to Mairin's sexual assault without the University addressing the conduct with Level.

198.    Specifically, President Staben stated, "In 2012, we had a concern about a student-athlete on our campus, Jahrie Level," "and had, at that time, the university taken a different course with him it is possible that all the 2013 incidents could have been avoided."

199.    President Staben has further acknowledged that the University violated Title IX with Mairin, stating, in pertinent part, "[a] couple things that are clear in the report [Independent Report] is that he [Spear] did not follow the policy that was in place."

200.    Spear told the University Senate that "there was no training on this campus about Title IX, no training about how you're supposed to handle certain situations" and that he was not properly trained by the University on Title IX policy.

201.    The University itself issued a press release admitting that the sexual assault on Mairin was "mishandled" under Title IX.

202.    On April 3, 2018, Spear was placed on administrative leave by the University for violating Title IX in responding to the sexual assault committed on Mairin.

203.    On August 16, 2018, the Idaho State Board of Education, by unanimous vote, fired Spear for his failure to follow Title IX in his handling of Mairin's sexual assault, along with his failure to address the prior complaints against Level.

COMPLAINT AND JURY DEMAND - 27

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

### FIRST CAUSE OF ACTION - MAIRIN
### VIOLATION OF TITLE IX – 20 U.S.C. § 1681
### (DISCRIMINATION ON THE BASIS OF GENDER/
### HOSTILE EDUCATIONAL ENVIRONMENT)

204.    Plaintiff re-alleges and incorporates paragraphs 1 through 203 inclusive, as though fully set forth herein.

205.    At all relevant times, Plaintiff was a member of the class of individuals protected by Title IX.

206.    At all relevant times, Defendant was a recipient of federal funding and was subject to the requirements of Title IX.

207.    As alleged herein, and found by the Defendant University, Plaintiff was subjected to a sexual assault by another student from the University.

208.    Plaintiff was denied access to educational opportunities and benefits as a result of a sexual assault that was severe, pervasive, objectively offensive and known by Defendant, as to alter the conditions of her education, create an abusive educational environment and deprive Plaintiff of access to educational opportunities and benefits provided by the Defendant University.

209.    Defendant University acted with deliberate indifference to Plaintiff's known sexual assault resulting in a hostile educational environment for Plaintiff by failing to address prior complaints made by two other female students against the same perpetrator Level that would have prevented the sexual assault against Plaintiff.

210.    Defendant University acted with deliberate indifference to Plaintiff's known sexual assault resulting in a hostile educational environment for Plaintiff as one or more

COMPLAINT AND JURY DEMAND - 28

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

University administrators, officials and law enforcement with authority to take corrective action on Plaintiff's behalf, had actual notice of said harassment and discrimination and failed to adequately respond, in violation of their own policies and Title IX. Those administrators, officials and law enforcement with actual knowledge included, Susan Steele (Athletics Academic Coordinator), Dave Lehmitz (campus division of Moscow Police under contract with the University), Paul Petrino (Football Coach), Rob Spear (Athletic Director), Mark Sowa (Swimming and Diving Coach), and Duane Nellis (former University President).

211. These administrators, officials and law enforcement with authority to take corrective action on Plaintiff's behalf, incorrectly informed Plaintiff that the University could not investigate this off-campus sexual assault against Plaintiff and failed under Title IX to immediately report the sexual assault and harassment by Level against Plaintiff to the Dean of Students Title IX Coordinator, failed to investigate the sexual assault and harassment by Level against Plaintiff (and others) occurring both on and off campus, failed to take immediate corrective action to protect Plaintiff, instituted an ad hock internal system of discipline for monitoring perpetrator Level after the sexual assault was reported by Plaintiff, failed to offer Plaintiff support or counseling, failed to address Plaintiff and her parents' concerns about Plaintiff's safety, University policies, and requests for mental health care, and failed at any point in time to inform Plaintiff of her Title IX rights which Plaintiff only recently learned through news stories on this matter, among other failures.

212. Legal counsel for Defendant University, advised Spear, Petrino and Sowa that they had failed to follow Title IX with respect to Plaintiff's complaint of sexual assault

COMPLAINT AND JURY DEMAND - 29

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1   and harassment by Level, and that information was hidden from Plaintiff until recent news

2   stories revealed the same.

3

4   213.   The University, Spear, University President Staben, and various other

5   University representatives and officials, have acknowledged in public statements and

6   hearings that Defendant University representatives and officials violated Title IX with

7   regard to the sexual assault against Plaintiff, including failing to properly train University

8

9   employees on Title IX.

10   214.   University President Staben acknowledged in public statements that had the

11   University properly addressed the prior complaints made by two other female students

12

13   against the same perpetrator Level, the Plaintiff would not have been sexually assaulted.

14   215.   University President Staben further admitted that Spear in particular did not

15   follow the Title IX policies in place at the University and Spear himself stated publically

16

17   that the University had not trained him on Title IX.

18   216.   Following an investigation into the facts surrounding the sexual assault on

19   Plaintiff, on July 16, 2018, an Independent Report was sanctioned by the University that

20

21   concluded the Defendant University violated Title IX and failed to properly train its

22   employees on Title IX, among a multitude of other failures raised in the Independent

23

24   Report.

25   217.   Consistent with the Independent Report's findings, the University itself

26   issued a press release admitting Plaintiff's sexual assault was mishandled under Title IX.

27

28   218.   Because of his failure to follow Title IX, Spear was placed on administrative

leave by the University, and on August 16, 2018, the Idaho State Board of Education, by

COMPLAINT AND JURY DEMAND - 30

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

unanimous vote, fired Spear for his failure to follow Title IX in his handling of Plaintiff's sexual assault.

219.    Those failures amounted to deliberate indifference toward the Plaintiff, and as a result, Plaintiff was sexually assaulted, subject to continuing harassment and a loss of educational opportunity.

220.    Additionally, and/or in the alternative, Defendant University failed to enact and/or disseminate and/or implement proper or adequate procedures to discover, prohibit or remedy the kind of gender based discrimination that Plaintiff suffered.   This failure included, without limitation, non-existent or inadequate customs, policies or procedures for the   recognition,   reporting,   investigation   and   correction   of   unlawful   based   gender discrimination. Those failures amounted to deliberate indifference toward the unlawful sexual conduct that had occurred, was occurring, or was likely to occur.   As a result, Plaintiff was subject to a sexual assault and loss of educational opportunity.

221.    Defendant University was deliberately indifferent and failed to institute any accommodation for Plaintiff, or assist or help the Plaintiff, instead punishing Plaintiff in the wake of the emotional and psychological trauma caused by the sexual assault.

222.    As a direct and proximate result of Defendant University's willful, knowing, intentional and deliberate indifferent conduct, Plaintiff experienced and will continue to experience pain and suffering and severe mental anguish and emotional distress.  Plaintiff is entitled to general, special, and compensatory damages, and which will be proven at trial.

COMPLAINT AND JURY DEMAND - 31

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1

## SECOND CAUSE OF ACTION - MAIRIN
## VIOLATION OF TITLE IX
## (DISCRIMINATION ON THE BASIS OF GENDER/HEIGHTENED RISK)

223.    Plaintiff re-alleges and incorporates paragraphs 1 through 222 inclusive, as though fully set forth herein.

224.    At all relevant times, Plaintiff was a member of the class of individuals protected by Title IX.

225.    At all relevant times, Defendant was a recipient of federal funding and was subject to the requirements of Title IX.

226.    As alleged herein, and found by the Defendant University, Plaintiff was subjected to a sexual assault by another student from the University of Idaho.

227.    Prior to the sexual assault by perpetrator Level against Plaintiff, the Defendant University had actual knowledge and was on notice of two prior complaints by female students, including an alleged sexual assault by perpetrator Level.

228.    Defendant University acted with deliberate indifference in failing to respond or investigate these two prior complaints against perpetrator Level, deviating significantly from the standard of care outlined by the DOE in the DCL of 2011 and the University's own policies.

229.    As a result of Defendant University's deliberate indifference there was a heightened risk on campus and Plaintiff was made more vulnerable to further harassment and the sexual assault by perpetrator Level.

COMPLAINT AND JURY DEMAND - 32

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

230.    University President Staben acknowledged in public statements that had the University properly addressed the prior complaints made by two other female students against the same perpetrator Level, the Plaintiff would not have been sexually assaulted.

231.    As a result of Defendant University's indifference, Plaintiff suffered loss of educational opportunities and/or benefits, and was sexually assaulted.

232.    At the time of allegations contained herein, Plaintiff was unaware of the University's pervasive failings with respect to their responsibilities under Title IX of failing to address the prior complaints against perpetrator Level as the Defendant University did nothing to address them.  Plaintiff first learned about the University's institutional failings under Title IX in 2018 when these failings became publically released and disclosed in the news.

233.    At the time of the allegations contained herein, Plaintiff was unaware of the Defendant University's pervasive failings with respect to its known response of sexual misconduct and complaints against perpetrator Level dating back prior to the sexual assault on Plaintiff.

234.    Because Defendant University kept this information from Plaintiff and the general public, Plaintiff, could not with reasonable diligence, have learned of this information independently.   Plaintiff first became aware of Defendant University's deliberate indifference to known issues of sexual misconduct and prior complaints against perpetrator Level in 2018 when this information was released publicly. At no point in time prior to 2018 did Mairin understand the University's deliberate indifference to her reports or

COMPLAINT AND JURY DEMAND - 33

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

that other complaints had been made against perpetrator Level, and thus, she was not in a position to inquire further.

235.    With respect to Plaintiff's heightened risk claims, Plaintiff had no reason to know of the causal connections to the sexual assault she suffered by perpetrator Level until 2018, when media reports came to light, and as such, the heightened risk claims are timely.

## THIRD CAUSE OF ACTION - MAIRIN
## NEGLIGENCE

236.    Plaintiff re-alleges and incorporates paragraphs 1 through 235 inclusive, as though fully set forth herein.

237.    Defendant University owed a duty of reasonable care to the Plaintiff not to act in a manner that would violate Title IX and foreseeably cause injury to the Plaintiff.

238.    For the reasons set forth above, including, but not limited to, Defendant University's failure to ensure that University employees involved in responding to allegations of sexual assault of students were trained and educated to competently respond to allegations under Title IX.  And, by instituting and maintaining an ad hock internal system of discipline for monitoring perpetrator Level after the sexual assault was reported by Plaintiff.

239.    Defendant University breached its duty owed to the Plaintiff through the acts and omissions described herein, and by deviating significantly from the standard of care outlined by the DOE in the DCL of 2011.

COMPLAINT AND JURY DEMAND - 34

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

240.    But for the intentional and negligent acts and omissions of Defendant's officials and representatives and their violations of the standards of care and the statute set forth herein, Plaintiff would not have been injured and Defendant was therefore negligent.

241.    Defendant's intentional and negligent acts and omissions therefore amount to negligence, negligent failure to warn, supervise, train, educate and/or respond, and negligence per se.

242.    As a direct and proximate result of the negligence by Defendant, the Plaintiff has suffered, and continues to suffer, physical and emotional injuries, pain and damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION - MAIRIN**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

243.    Plaintiff re-alleges and incorporates paragraphs 1 through 242 inclusive, as though fully set forth herein.

244.    Defendant University owed a duty of reasonable care to the Plaintiff not to act in a manner that would cause injury to the Plaintiff.

245.    Defendant University breached its duties owed to the Plaintiff and was therefore negligent.

246.    Defendant acted in conscious disregard of the high probability of causing emotional distress to Plaintiff, in that it knew, or should have known, there was a high degree of probability that emotional distress would result by its actions of, among other things, failing to address prior complaints made by two other female students against the same perpetrator Level that would have prevented the sexual assault against Plaintiff; failing

COMPLAINT AND JURY DEMAND - 35

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

to adequately respond in violation of their own policies and Title IX; incorrectly informing Plaintiff that the University could not investigate this off-campus sexual assault against Plaintiff; failing to address on-campus sexual harassment against Plaintiff and others by perpetrator Level; failing under Title IX to immediately report the sexual assault and harassment by Level against Plaintiff to the Dean of Students Title IX Coordinator; failing to investigate the sexual assault and harassment by Level against Plaintiff; failing to take immediate corrective action to protect Plaintiff; instituting an ad hock internal system of discipline for monitoring perpetrator Level after the sexual assault was reported by Plaintiff; failing to offer Plaintiff support or counseling; failing to address Plaintiff and her parents' concerns about Plaintiff's safety; failing at any point in time to inform Plaintiff of her Title IX rights which Plaintiff only recently learned through news stories on this matter; keeping hidden from Plaintiff that legal counsel had informed University officials and representatives they had violated Title IX; and failing to properly train University employees on Title IX, among other acts and omissions.

247.     By the conduct described herein, Defendant intentionally or recklessly inflicted emotional distress upon Plaintiff.

248.     Defendant's conduct was willful and malicious or manifested a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff.

249.     As a direct and proximate result of Defendant University's acts and omissions, Defendant University is liable for the emotional distress and mental suffering incurred by Plaintiff in the past, present and future.

COMPLAINT AND JURY DEMAND - 36

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

### FIFTH CAUSE OF ACTION - MAIRIN
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

250.    Plaintiff re-alleges and incorporates paragraphs 1 through 249 inclusive, as though fully set forth herein.

251.    Defendant owed a duty of reasonable care to Plaintiff not to act in a manner that would cause injury to Plaintiff.

252.    Defendant breached its duties owed to Plaintiff and was therefore negligent.

253.    Defendant University acted in negligent disregard of causing emotional distress to Plaintiff in that Defendant knew or should have known that its actions and omissions created a high degree of probability that emotional distress would result to Plaintiff by, among other things, failing to address prior complaints made by two other female students against the same perpetrator Level that would have prevented the sexual assault against Plaintiff; failing to adequately respond in violation of their own policies and Title IX; incorrectly informing Plaintiff that the University could not investigate this off-campus sexual assault against Plaintiff; failing to address on-campus sexual harassment against Plaintiff and others by perpetrator Level; failing under Title IX to immediately report the sexual assault and harassment by Level against Plaintiff to the Dean of Students Title IX Coordinator; failing to investigate the sexual assault and harassment by Level against Plaintiff; failing to take immediate corrective action to protect Plaintiff; instituting an ad hock internal system of discipline for monitoring perpetrator Level after the sexual assault was reported by Plaintiff; failing to offer Plaintiff support or counseling; failing to address Plaintiff and her parents' concerns about Plaintiff's safety; failing at any point in

COMPLAINT AND JURY DEMAND - 37

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1   time to inform Plaintiff of her Title IX rights which Plaintiff only recently learned through

2
3   news stories on this matter; keeping hidden from Plaintiff that legal counsel had informed

4   University official and representatives they had violated Title IX; and failing to properly

5   train University employees on Title IX, among other acts and omissions.

6
7       254.    As a direct and proximate result of Defendant's actions and omissions,

8   Plaintiff has suffered, and continues to suffer, pain and suffering in an amount and of a

9   character to be proven at the time of trial.

10      255.    Defendant's conduct has harmed Plaintiff, and caused Plaintiff damages, and

11
12  Defendant is liable for the emotional distress and mental suffering incurred by Plaintiff in

13  the past, present and future.

14
15                              **COSTS AND ATTORNEY FEES**

16      Plaintiff's claims arise from violations of 20 U.S.C. § 1681 ("Title IX").  As an

17  action to enforce this provision and vindicate violation of rights and duties thereunder,

18
19  Plaintiff is entitled to an award of costs and attorney fees in an amount to be deemed

20  reasonable by this Court pursuant to 42 U.S.C. § 1988(b).

21                              **DEMAND FOR JURY TRIAL**

22
23  Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to

24  Rule 38 of the Federal Rules of Civil Procedure.

25                              **PRAYER FOR RELIEF**

26      NOW, THEREFORE, Plaintiff respectfully demands judgment against Defendant

27
28  University of Idaho for the following:

COMPLAINT AND JURY DEMAND - 38

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1       1.      For general, special, and other compensatory damages for all harm and damages caused;

2.      Pre- and post-judgment interest;

3.      Costs;

4.      For a trial by jury;

5.      Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

6.      For such other relief as the Court deems just and equitable.

DATED this 16th day of October, 2018.

RANDALL | DANSKIN, P.S.


By:    s/ TROY Y NELSON
     Troy Y. Nelson, ISB #5851
     Attorneys for Plaintiff
     601 W. Riverside Avenue, Suite 1500
     Spokane, WA  99201
     Phone: 509-747-2052
     Fax:  509-624-2528
     tyn@randalldanskin.com

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052