| | |
|---|---|
| MAIRIN JAMESON, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IDAHO, a public university,<br><br>    Defendant. | Case No. 3:18-cv-00451-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant University of Idaho's Motion to Dismiss. Dkt. 6. On October 11, 2019, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion.

## II. BACKGROUND[1]

Plaintiff Mairin Jameson is a former student at the University of Idaho ("UI"). UI is a state institution of higher education located in Moscow, Idaho. UI receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681 *et seq*. and is otherwise subject to Title IX.

---

[1] All facts are construed in the light most favorable to Jameson, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On April 21, 2013, Jameson was sexually assaulted by Jahrie Z. Level, a UI football player, off campus. At the time, Jameson was a third-year student enrolled at UI and a diver on UI's swim team. Prior to this event, Jameson had been harassed by Level and witnessed Level harassing another female student on campus.

On April 25, 2013, Jameson reported that she had been sexually assaulted by Level to Moscow Police Lieutenant Dave Lehmitz and to three UI officials: Athletic Director Rob Spear, Athletics Academic Coordinator Susan Steele, and UI head football coach Paul Petrino. Spear, Steele, and Petrino initially informed her that the UI could not investigate because the sexual assault had occurred off campus. The officials did not offer to report—and did not report—Level's sexual assault and harassment to the Dean of Students. They also did not offer Jameson any support or counseling. They did inform Jameson that Level would be required to seek counseling and to check in twice a day with UI's head football coach.

On May 3, 2013, Jameson visited the Women's Center at UI and told the Director of the Women's Center that she had been assaulted by Level. The Director informed the UI's Dean of Students of the incident, who then launched an investigation. At no time during this process was Jameson informed of her Title IX rights by any UI personnel.

On October 7, 2013, UI completed its investigation of Level, when its University Judicial Counsel found that it was more likely than not that Level had committed seven violations of UI's Student Code of Conduct. Five of the violations concerned Level's sexual assault and harassment of Jameson while the remaining two violations involved

Level's harassment and intimidation of another female student. UI subsequently expelled Level.

Sometime later, UI authorized an independent investigation regarding its handling of Title IX cases. On July 16, 2018, the investigators issued the "Independent Investigation Report" ("Independent Report") to UI. The report concluded, in part, that UI staff had failed to comply with Title IX at numerous points during UI's investigation of Jameson's claim. At an unspecified time, UI President Chuck Staben also made public statements that Jameson's sexual assault might have been avoided if UI had appropriately handled two prior complaints against Level.

On October 16, 2018, Jameson filed her Complaint for general, special, and compensatory damages. She asserts three state law claims: (1) negligence; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. She also asserts two Title IX claims: (1) that UI's deliberate indifference to her post-assault report created a hostile educational environment and (2) that UI's deliberate indifference to students' prior reports about her assailant created a heightened risk on campus for sexual assault or harassment.

On November 14, 2018, UI filed the instant motion to dismiss because all of Jameson's causes of actions are allegedly time-barred and because it is entitled to sovereign immunity on Jameson's state law claims.

### III. LEGAL STANDARD

*1. Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

Court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

    2. *Federal Rule of Civil Procedure 12(b)(6)*

Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pled factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

# IV.  DISCUSSION

1. *State Law Claims Against UI*

UI moves to dismiss Jameson's three state law claims—her third through fifth causes of action—under Federal Rule of Civil Procedure 12(b)(1). UI argues that, as an arm of the State of Idaho, it has sovereign immunity from state law claims brought in federal court. Jameson states she "does not oppose dismissal of her state law claims due to sovereign immunity." Dkt. 8, at 19 n.1. The Court agrees that because the state has not waived its sovereign immunity, this Court lacks subject matter jurisdiction over the state law claims against UI. Accordingly, Jameson's third, fourth, and fifth causes of action are dismissed with prejudice pursuant to Rule 12(b)(1). *See Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1153 (9th Cir. 2018) (stating state law claims barred by the Eleventh Amendment should be dismissed with prejudice).

2. *Title IX Claims Against UI*

Jameson asserts two Title IX claims in her Complaint. First, she alleges UI's deliberately indifferent response to her report that she had been sexually assaulted deprived her of educational opportunities and benefits provided by the school. The Court will refer to this claim as Jameson's "post-reporting claim." Second, Jameson alleges UI's handling of prior complaints against Level heightened the risk that she would be sexually assaulted. The Court will call this claim Jameson's "heightened-risk claim."

An individual has a private right of action to enforce Title IX and recover damages. *Davis Next Friend LaShonda D. v. Monroe City. Bd. of Educ.*, 526 U.S. 629, 639 (1999) (internal citations omitted). The recognition of this private right of action has given rise to

two general avenues for Title IX claims: one for claims based on an official policy of discrimination and the other for claims based on an institution's actual notice of, and deliberate indifference to, sexual harassment or assault. "In sexual harassment cases, it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation." *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010). Both of Jameson's Title IX claims rely on the second avenue for a Title IX claim, the deliberate failure to prevent known harassment.

To establish deliberate indifference under Title IX, plaintiffs must first demonstrate the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Next, they must show that a school official with the authority to institute corrective measures on the school district's behalf: (1) had actual notice of the alleged discrimination and (2) responded to the discrimination with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1989). For the school to have "actual knowledge" of harassment, "an official of the recipient entity with authority to take corrective action" must have both actual knowledge of the harassment and an "opportunity to rectify any violation." *Id*. at 290. The test for deliberate indifference to known acts of harassment is "whether a reasonable fact-finder could conclude that the [official]'s response was clearly unreasonable in light of the known circumstances." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (internal quotation marks and citation omitted).

UI moves to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) because Jameson's Title IX claims are barred by the applicable statute of limitations. A complaint may be dismissed based on a statute of limitations defense if it is evident on the face of the pleadings the action is time-barred and limitations period should not be tolled. As Title IX has no express limitations period, the Ninth Circuit uses the applicable state's personal injury limitations period. *Stanley v. Trustees of Calif. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006). Idaho law applies a two-year statute of limitations to personal injury actions. Idaho Code § 5-219(4). Both parties agree that Jameson's Title IX claims are subject to Idaho's two-year statute of limitations.

Absent tolling, the two-year limitation period runs from the moment a plaintiff's claim accrues. Although state law "determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Lukovsky v. City and Cty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). In the Ninth Circuit, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*. (internal quotation marks and citation omitted). Accrual is tied to the "awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong." *Id*. at 1049 (internal quotation marks and citation omitted). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Stanley*, 433 F.3d at 1136 (internal quotation marks and citation omitted).

However, "[b]ecause it is inequitable to bar someone who has no idea he has been harmed from seeking redress, the statute of limitations has generally been tolled by the 'discovery rule.'" *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir.

1999), *opinion amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000). *See also TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (observing that "lower federal courts generally apply a discovery accrual rule when a statute is silent on the issue" (internal quotation marks and citation marks omitted)). This means a claim will not accrue until a plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau*, 188 F.3d at 1008 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)); *see also Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("The general common law principle is that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury."). A cause of action accrues upon knowledge of the critical facts even if "the full extent of the injury is not then known." *Wallace v. Kato*, 549 U.S. 384, 391 (2007). Because a plaintiff "must be diligent in discovery the critical facts," a plaintiff who was unaware of his injury will be barred from asserting his claim after the statute of limitations has run if "he *should* have known [of his injury] in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108 (emphasis added).

UI argues that Jameson was fully aware of her Title IX injuries at latest by October 7, 2013, when she supposedly learned that UI's disciplinary hearings against Level concerning his sexual assault of Jameson and harassment of another female student had concluded. Jameson argues that her claims under Title IX did not accrue until 2018, when the Independent Report revealed UI's alleged role in her assault and that she had legal rights under Title IX. Jameson further argues that, to the extent her claims accrued earlier, they are subject to tolling or equitable estoppel under state law.

MEMORANDUM DECISION AND ORDER - 8

> i. Post-Reporting Claim

Jameson's post-reporting claim (her first cause of action) is time-barred. Jameson reported her sexual assault in April 2013 to Spear, Steele, and Petrino—UI personnel who had authority to take corrective action. In response, the UI officials failed to: take immediate corrective action to protect Jameson, refer her to the counseling center for mental health treatment, investigate her claims, report her case to the Title IX office, address Jameson and her parent's concerns about her safety and university policies, institute any accommodation for Jameson, or generally assist and help her. Dkt. 1, ¶¶ 211, 221. Jameson alleges these official's responses were deliberately indifferent—in effect, that they were clearly unreasonable in light of the known circumstances. *See Oden*, 440 F.3d at 1089 (9th Cir. 2006). Because of UI's deliberately indifferent response, Jameson alleges she was subjected to further harassment and was otherwise deprived of educational opportunities to which she was entitled. Dkt. 1, ¶ 219. Jameson asserts she did not know of UI's deliberately indifferent response to her report until 2018, when the Independent Report that documented UI's Title IX failures in relation to how it had handled Jameson's case was published.

Jameson knew of the critical facts of her post-reporting injury as of 2013. Within some reasonable amount of time after she initially reported her sexual harassment claim to UI officials in the spring of 2013, Jameson should have understood that UI had done nothing to help her or address her concerns. Jameson's post-reporting Title IX claim accrued at the time she reported her assault to UI officials and experienced deliberately indifferent responses. *See Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1134 (D.

Or. 2016) (finding that a plaintiff was time-barred from bringing a claim because she "learned of [the funding recipient's] deliberate indifference to her report of rape when [the funding recipient] was in fact deliberately indifferent to her own report of the assault"). In other words, Jameson's post-reporting claim accrued when she knew of the injury that formed the basis of her federal claims, not when Jameson learned about her legal rights or additional facts about UI's behavior from the Independent Investigation which would have bolstered her claims.

Jameson argues that even if her post-reporting claim accrued in 2013, it should be tolled.[2] When a federal court applies a state's statute of limitations, it "look[s] to state law to determine the application of tolling doctrines." *Harding v. Galceran*, 889 F.2d 906, 907 (9th Cir. 1989) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 486–87 (1980)). "The only non-statutory bar to a statute of limitation defense in Idaho is the doctrine of equitable estoppel." *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 887 P.2d 1039, 1041 (1994). The elements of equitable estoppel under Idaho law are:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth;

---

[2] Facts that support tolling a statute of limitations, such as facts suggesting the statute should be tolled on the basis of equitable estoppel, should be alleged in a complaint. *Sayegh v. John Enright, Inc.*, 473 F. App'x 605 (9th Cir. 2012) (upholding that complaints should allege facts that would support tolling the statute of limitations). Defendant contends in its Reply that Jameson failed to sufficiently support her equitable estoppel defense in her Complaint. Dkt. 14, at 9. However, both parties represented during oral argument that they consented to the Court addressing the merits of Jameson's position on equitable estoppel, as the issue had been briefed and argued. The Court does so with respect to Jameson's post-reporting claim but does not reach the issue with respect to her heightened-risk claim. Going forward, the Court recommends that Jameson move to amend her complaint as necessary if she wishes to raise equitable estoppel to support tolling the statute of limitations with respect to her remaining claim.

(2) that the party asserting estoppel did not know or could not discover the truth;
(3) that the false representation or concealment was made with the intent that it be relied upon; and
(4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Ferro v. Soc'y of Saint Pius X*, 149 P.3d 813, 815 (2006) (quoting *Chemetics*, 887 P.2d at 1041). Equitable estoppel does not eliminate, toll, or extend the statute of limitations but rather bars a party from asserting the statute of limitations as a defense. *Id.*

Jameson first argues equitable estoppel is appropriate because UI had an "actual obligation under Title IX to advise Plaintiff Jameson of her Title IX rights which they failed to do." Dkt. 8, at 18. Jameson contends that UI's duty was established by the Office of Civil Right's Dear Colleague Letter of April 4, 2011, which stated that "schools should ensure that complainants are aware of their Title IX rights." Letter from Russlynn Ali, Assistant Sec'y for Civil Rights, Office for Civil Rights, U.S. Dep't of Educ., at 16 (Apr. 4, 2011) (available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf). Jameson argues UI's failure to inform her of her legal rights amounts to fraudulent concealment. But for equitable estoppel to apply under Idaho law, UI must have fraudulently concealed a material fact. Jameson essentially alleges the accrual should be tolled because UI failed to inform her of the law—not the facts—that formed the basis of her claim.

Jameson next argues that UI should be equitably estopped from asserting a statute of limitations defense because UI concealed facts from her regarding its violation of Title IX—namely that it had been informed by its own legal counsel that it had violated Title IX

and had a draft report of its Title IX failures. Importantly, equitable estoppel requires the defendant to conceal material facts from a party without knowledge of those facts. While Jameson may not have known the full extent of her injury, she knew the critical facts underlying her post-reporting claim in 2013. Furthermore, equitable estoppel requires the defendants to conceal with the *intent* that the concealment be relied upon, and also requires that the person from whom the facts were concealed relied and acted upon the concealment to her prejudice. Jameson never issued any discovery requests to the UI for information and fails to identify any legal duty for UI to proactively provide her with its attorney-client communications or a draft report of its Title IX failures. She had no basis to rely on such concealed facts. The doctrine of equitable estoppel does not apply here. Plaintiff's post-reporting claim is therefore barred.

    ii.   Heightened-Risk Claim

With regards to Jameson's heightened-risk claim (her second cause of action), the Court finds the allegations in Jameson's Complaint, read with the required liberality, are sufficient to survive a motion to dismiss. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."). Jameson alleges UI's deliberate indifference to prior reports about Level's behavior created an environment in which it was more likely that he would sexually harass women, including Jameson. Furthermore, Jameson contends that vulnerability—or heightened risk—constitutes harassment under Title IX. Jameson suggests her claim is timely because she

was unaware of her underlying injury until it was publicly disclosed in 2018 that UI had failed to investigate two complaints against Level prior to April 21, 2013. UI generally argues the claim is untimely because Jameson was aware of her injury in 2013.[3]

The parties disagree over the proper legal framework to analyze when the statute of limitations accrues for a heightened-risk Title IX claim. In both its written briefing and during oral arguments, UI suggested that the Court should look to *Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016), as an example of how to apply Ninth Circuit precedent in cases of heightened-risk claims. In *Samuelson*, the plaintiff brought a Title IX claim against Oregon State University ("OSU"). In Samuelson's complaint, she titled her claim, "Deliberate Indifference to Prior Sexual Violence," alleging that OSU generally knew the risk its football program's hostile culture posed to female students and specifically knew that a particular football student associated with "other sexually violent males who would sexually harass OSU's female students in his apartment." *Id*. at 1127–28. The District of Oregon Court re-designated Samuelson's claim as "Title IX Claim Against OSU," and pointedly did not treat her claim as a heightened-risk claim. It did so on the grounds that OSU lacked any control over the harasser because "Ms. Samuelson was not raped during an activity sanctioned, supported, and funded by OSU," the assault

---

[3] In its reply, UI raises for the first time a plausibility challenge to Jameson's complaint. *See* Dkt. 14, at 5 ("It is beyond doubt that Plaintiff cannot prove any set of facts in support of her heightened-risk claim which would entitle her to relief. Plaintiff's arguments for the application of the discovery rule to her "heightened-risk" claim are extraneous since the factual allegations in support of the claim demonstrate that she did not suffer an injury.") As this argument was not raised in time for Jameson to respond, the Court will only consider whether the statute of limitation time-bars Jameson's claim—UI's original grounds for its motion to dismiss.

happened at an off-campus apartment, and OSU "had no connection at all" to Samuelson's rapist. *Id.* at 1134. "Because OSU lacked any control over the harasser or the context of the harassment, it is not liable under Title IX." *Id*. Instead, the court construed Samuelson's claim as one alleging OSU violated Title IX by its deliberate indifference in its response to her report of the rape. *Id*. Only then did the court analyze whether Samuelson's Title IX claim was barred by the statute of limitations. Because there is no contention in the pending case that UI lacked any control over the harasser, a UI student-athlete, *Samuelson* is inapplicable with regards to Jameson's heightened-risk claim.

In contrast, Jameson argues the *Baylor* cases supply the proper framework. *See Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763 (W.D. Tex. 2018); *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Tex. 2017); *Hernandez v. Baylor University*, 274 F. Supp. 3d 602 (W.D. Tex. 2017). In the *Baylor* cases, plaintiffs argued they had no notice of Baylor University's policies, procedures, and customs that created the heightened-risk environment until Baylor University publicly released an internal investigation report of its Title IX practices. The Western District Court of Texas found it "plausible that the plaintiffs in that case had no reason to further investigate their heightened-risk claims until the release of [the university's report] and the subsequent media coverage in 2016." *Doe 12*, 336 F. Supp. 3d at 784 (internal citation omitted). Even if plaintiffs knew from criminal cases that an individual had assaulted other woman, such knowledge was "insufficient to demonstrate that she would have been put on notice to look into [the university's] knowledge of [the perpetrator's] history." *Hernandez*, 274 F. Supp. 3d at 616–17.

Accordingly, the *Baylor* courts found that the heightened-risk claims did not accrue until the release of the report. *Id*. at 17; *Doe 12*, 336 F. Supp. 3d at 784.

UI argues the *Baylor* cases conflict with Ninth Circuit precedent that the proper focus of when a claim accrues is on the time of the discriminatory acts, not at the time when a plaintiff becomes aware of the legal wrong. Dkt. 14, at 5 (citing to *Lukovsky*, 535 F.3d at 1049; *Stanley*, 433 F.3d at 1136). The Court disagrees that the *Baylor* cases conflict with Ninth Circuit precedent. In the Ninth Circuit, a claim accrues when plaintiff has knowledge (or should have knowledge) of the "critical facts" of her injury which are (1) that she has been hurt and (2) who inflicted her injury. *See Bibeau*, 188 F.3d at 1108. Plaintiffs argue *Bibeau* is inapplicable because the facts of that case concerned medical side-effects. However, the claim accrual reasoning in *Bibeau* is applicable to any case where a court applies a state's statute of limitations in construing a federal substantive claim. The Supreme Court has held that to determine when a federal claim accrues, the courts must revert to "federal rules conforming in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "The general common law principle is that a cause of action accrues when 'the plaintiff knows or has reason to know of the injury." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). The Ninth Circuit has "interpreted the 'question . . . [of] what . . . we mean by injury' with some flexibility, and held that a 'claim accrues' not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the *cause* of that injury.'" *Id*. (quoting *Lukovsky*, 535 F.3d at 1050) (emphasis added).

The Ninth Circuit claim accrual standard detailed in *Bibeau* aligns with the *Baylor* courts' reasoning. In the *Baylor* cases, plaintiffs did not know the critical fact that Baylor University had inflicted the injury because they had no knowledge that Baylor University was on notice of the assaulter's history and had failed to do anything in response. Crucially, the plaintiffs had no reason to investigate Baylor University's role in their assault until the media disclosed the relationship.

In order for the claim to accrue, Jameson must have had enough critical facts to have been put on notice that she should look into UI's knowledge of Level's history. In her Complaint, Jameson alleges that UI was on notice that Level was involved in some way in a November 14, 2012 incident where a heavily intoxicated student was taken to the hospital with severe bruising around her neck.[4] The incident was reported to the Moscow Police and UI's Dean of Students' office, but UI did not investigate the incident or take any step to mitigate future incidents by Level.

Jameson also alleges that UI was on notice that Level sexually harassed and intimidated Maggie Miller, a UI distance runner, while she was in a cold tub in UI's athletic training room on April 8, 2013. When Miller declined Level's invitation to a social event, Level became upset and threatened Miller in Jameson's presence, using gendered slurs. Two hours later, Level walked by where Miller was sitting and stared at her. Miller felt he

---

[4] During oral arguments, Jameson's counsel mentioned that the November 2012 incident concerned an allegation that Level had sexually assaulted another student. The actual complaint does not include this information. *See* Dkt. 1, at ¶¶ 12–20.

was trying to intimidate her, so she looked for staff and reported his actions to the Moscow Police Department, as well as to UI's head football coach later that day.

Jameson states in her Complaint that she was present and heard Level's April 8, 2013 threats to Miller in UI's athletic training room and that she reported what she knew about Level's interactions with Miller on April 25, 2013. However, the issue is not whether *Jameson* knew about Level's previous behavior, but whether she was on notice that UI had knowledge of Level's previous behavior *prior* to her own assault and subsequent reporting. The Complaint is unclear about what Jameson knew about UI's knowledge and when she knew it. At oral argument, counsel for Jameson represented that Jameson did not know until 2018, when the Independent Report was published, that UI was aware of Level's involvement in the November 13, 2012 and April 8, 2018 incidents prior to her assault and was unaware that UI had subsequently failed to investigate those incidents.

However, in her Complaint, Jameson alleges UI examined both Jameson's and Miller's complaints against Level and completed its investigation on October 7, 2013. On October 7, 2013, the University Judicial Counsel found that it was more likely than not that Level had committed seven violations of UI's Student Code of Conduct and subsequently expelled Level. While five of the violations concerned Level's behavior towards Jameson, the remaining two violations concerned Level's harassment and intimidation of Miller. When pressed as to whether Jameson was aware at the time that UI's University Judicial Counsel's October 7, 2013 decision also addressed complaints by Miller against Level, Jameson's counsel answered that he did not know. Jameson's counsel did suggest that the

details concerning Miller's report to UI documented in the Complaint came from discussions Jameson had with Miller in 2018 after the Independent Report was released.

In order for the claim to accrue, Jameson must have enough critical facts to be put on notice that she should look into UI's knowledge of Level's history. After reviewing the Complaint and briefings, as well as listening to oral arguments at the motion hearing, it is plausible that Jameson had no reason to further investigate her heightened-risk claim until after the release of the Independent Report and the subsequent media coverage in 2018. Liberally construed, Jameson's heightened-risk claim survives a motion to dismiss.

## V. LEAVE TO AMEND

Leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Courts apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave to amend, the court generally considers five factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4) prejudice to the opposing party; and (5) whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). These factors are not weighted equally: futility of amendment alone can justify the denial of a motion to amend. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009). Here, the Court finds it would be futile for Jameson to amend her complaint to save her first, third, fourth, and fifth causes of action. Jameson is denied leave to amend those causes of actions.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendant's Motion to Dismiss (Dkt. 6) is GRANTED as to Plaintiff's First, Third, Fourth, and Fifth Causes of Action. Plaintiff's First, Third, Fourth and Fifth causes of action are dismissed with prejudice;

2. Defendant's Motion to Dismiss (Dkt. 6) is DENIED as to Plaintiff's Second Cause of Action.

DATED: October 30, 2019

David C. Nye
Chief U.S. District Court Judge